# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| BLAKE J. WATTERSON; | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-00080 |
| | § | |
| BUREAU OF ALCOHOL, TOBACCO, | § | |
| FIREARMS AND EXPLOSIVES; | § | |
| | § | |
| STEVEN DETTELBACH, in his | § | |
| official capacity as Director of the | § | |
| Bureau of Alcohol, Tobacco, Firearms | § | |
| and Explosives; | § | |
| | § | |
| UNITED STATES DEPARTMENT | § | |
| OF JUSTICE; | § | |
| | § | |
| MERRICK GARLAND, in his official | § | |
| capacity as Attorney General of the | § | |
| United States; | § | |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| *Defendants.* | § | |

## PLAINTIFF'S MOTION FOR RELIEF UNDER 5 U.S.C. § 705 OR, ALTERNATIVELY, FOR A PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................................................... ii

INTRODUCTION ................................................................................................... 1

FACTUAL BACKGROUND...................................................................................... 1

STANDARD FOR GRANTING THE MOTION ............................................................ 3

ARGUMENT AND AUTHORITIES............................................................................ 3

I.     PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS................................. 3

       A.     The Rule Violates the Second Amendment ............................................ 3

       B.     The Rule Violates Article I and Constitutional Separation-of-
              Powers Principles ................................................................................. 5

       C.     The Rule Exceeds the Department's Statutory Authority .................... 8

II.    PLAINTIFF WILL SUFFER IRREPARABLE HARM IN THE ABSENCE OF
       PRELIMINARY RELIEF ............................................................................. 10

III.   THE BALANCE OF THE EQUITIES AND PUBLIC INTEREST WEIGH IN FAVOR
       OF GRANTING PRELIMINARY RELIEF ...................................................... 11

IV.    THE COURT SHOULD POSTPONE OR STAY THE RULE'S EFFECTIVE DATE
       OR, ALTERNATIVELY, ISSUE A PRELIMINARY INJUNCTION .................... 13

CONCLUSION .................................................................................................... 15

CERTIFICATE OF SERVICE ................................................................................. 17

CERTIFICATE OF CONFERENCE ......................................................................... 18

TABLE OF AUTHORITIES

*Cases:*

*BST Holdings, L.L.C. v. OSHA,*
    17 F.4th 604 (5th Cir. 2021) ...................................................................... 10, 12

*Caetano v. Massachusetts,*
    577 U.S. 411 (2016) ........................................................................................ 4

*Cargill v. Garland,*
    No. 20-51016, 2023 U.S. App. LEXIS 344 (5th Cir. Jan. 6, 2023) ................... 6

*Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.,*
    511 F.3d 535 (6th Cir. 2007) .......................................................................... 3

*Envtl. Defense Fund v. EPA,*
    515 F. Supp. 3d 1135 (D. Mont. 2021) ......................................................... 14

*Ezell v. City of Chicago,*
    651 F.3d 684 (7th Cir. 2011) ................................................................... 10, 12

*Gonzales v. Oregon,*
    546 U.S. 243 (2006) ........................................................................................ 9

*Gordon v. Holder,*
    721 F.3d 638 (D.C. Cir. 2013) ...................................................................... 12

*Gun Owners of Am. v. Garland,*
    19 F.4th 890 (6th Cir. 2021) ....................................................................... 8, 9

*Gundy v. United States,*
    139 S. Ct. 2116 (2019) ................................................................................. 6, 7

*Hardaway v. Nigrelli,*
    No. 22-CV-771 (JLS), 2022 U.S. Dist. LEXIS 200813
    (W.D.N.Y. Nov. 3, 2022) ......................................................................... 10, 13

*Heller v. District of Columbia,*
    670 F.3d 1244 (D.C. Cir. 2011) ...................................................................... 5

*Indus. Union Dep't, AFL-CIO v. API,*
    448 U.S. 607 (1980) ........................................................................................ 6

*Jackson Women's Health Org. v. Currier,*
    760 F.3d 448 (5th Cir. 2014) ............................................................................ 12

*Jacksonville Port Auth. v. Adams,*
    556 F.2d 52 (D.C. Cir. 1977) ............................................................................ 12

*Jarkesy v. SEC,*
    34 F.4th 446 (5th Cir. 2022) .......................................................................... 6, 8

*Lakedreams v. Taylor,*
    932 F.2d 1103 (5th Cir. 1991) ....................................................................... 3, 8

*Louisiana v. Biden,*
    55 F.4th 1017 (5th Cir. 2022) ........................................................................... 12

*Loving v. United States,*
    517 U.S. 748 (1996) .......................................................................................... 7

*Miller v. Bonta,*
    542 F. Supp. 3d 1009 (S.D. Cal. 2021) .............................................................. 5

*Montanans for Multiple Use v. Barbouletos,*
    568 F.3d 225 (D.C. Cir. 2009) .......................................................................... 14

*Murphy v. Guerrero,*
    No. 1:14-CV-00026, 2016 U.S. Dist. LEXIS 135684 (D. N. Mar. I. Sept. 28,
    2016) ................................................................................................................. 5

*N.Y. State Rifle & Pistol Ass'n v. Bruen,*
    142 S. Ct. 2111 (2022) ................................................................................... 4, 5

*Nat'l Fed'n of Indep. Bus. v. OSHA,*
    142 S. Ct. 661 (2022) ....................................................................................... 14

*Nken v. Holder,*
    556 U.S. 418 (2009) .......................................................................................... 3

*Panama Ref. Co. v. Ryan,*
    293 U.S. 388 (1935) .......................................................................................... 6

*Rigby v. Jennings,*
    No. 21-1523 (MN), 2022 U.S. Dist. LEXIS 172375 (D. Del. Sept. 23, 2022)... 11

*Rocky Mt. Gun Owners, Nat'l Ass'n v. Bd. of Cty. Comm'rs,*
No. 1:22-cv-02113-CNS-MEH, 2022 U.S. Dist. LEXIS 156308 (D. Colo. Aug. 30, 2022) ........................................................................................................... 12

*State v. Biden,*
10 F.4th 538 (5th Cir. 2021) ........................................................................... 12

*Texas v. Biden,*
No. 2:21-CV-067-Z, 2022 U.S. Dist. LEXIS 226330
(N.D. Tex. Dec. 15, 2022) ........................................................................ 14, 15

*Texas v. EPA,*
829 F.3d 405 (5th Cir. 2016) ....................................................................... 3, 11

*Texas v. United States,*
809 F.3d 134 (5th Cir. 2015), *aff'd* 577 U.S. 1101 (2016) ............................... 15

*Texas v. United States,*
86 F. Supp. 3d 591 (S.D. Tex. 2015) .............................................................. 15

*Touby v. United States,*
500 U.S. 160 (1991) ......................................................................................... 7

*United States v. Davis,*
139 S. Ct. 2319 (2019) ..................................................................................... 6

*United States v. Grimaud,*
220 U.S. 506 (1911) ......................................................................................... 7

*United States v. Kuzma,*
967 F.3d 959 (9th Cir. 2020) ........................................................................... 9

*United States v. S. Ind. Gas & Elec. Co.,*
No. IP99-1692-C-M/S, 2002 U.S. Dist. LEXIS 20936 (S.D. Ind. 2002) .......... 14

*Util. Air Regulatory Grp. v. EPA,*
573 U.S. 302 (2014) ....................................................................................... 10

*Vanderstok v. BlackHawk Mfg. Grp., Inc.,*
No. 4:22-cv-00691-O, 2022 U.S. Dist. LEXIS 200315, at *15 (N.D. Tex. Nov. 3, 2022*)* ............................................................................................................. 13

*Vanderstok v. Garland,*
No. 4:22-cv-00691-O, 2022 U.S. Dist. LEXIS 159459

(N.D. Tex. Sept. 2, 2022) ............................................................................ 9, 11

*Vanderstok v. Garland*,
    No. 4:22-cv-00691-O, 2022 U.S. Dist. LEXIS 180398
    (N.D. Tex. Oct. 1, 2022) .............................................................................. 11

*Voting for Am., Inc. v. Andrade*,
    488 F. App'x 890 (5th Cir. 2012) (per curiam) ........................................... 3

*Weingarten Realty Inv'rs v. Miller*,
    661 F.3d 904 (5th Cir. 2011) ................................................................ 3, 5, 8

*West Virginia v. EPA*,
    142 S. Ct. 2587 (2022) .................................................................................. 8

### Statutes

18 U.S.C. § 921 .................................................................................................... 9

18 U.S.C. § 922 .................................................................................................... 2

18 U.S.C. § 926 ............................................................................................... 7, 8

26 U.S.C. § 5845 .................................................................................................. 9

26 U.S.C. § 5861 .................................................................................................. 2

26 U.S.C. § 5871 .................................................................................................. 2

26 U.S.C. § 5872 .................................................................................................. 2

26 U.S.C. § 7801 ............................................................................................... 7, 8

5 U.S.C. § 553 ............................................................................................... 14, 15

5 U.S.C. § 705 ................................................................................... 3, 13, 14, 15

5 U.S.C. § 801 .................................................................................................... 14

### Other Authorities:

Joseph G.S. Greenlee, *The American Tradition of Self-Made Arms*, 54 ST. MARY'S
    L.J. 35, 78 (2023) ......................................................................................... 5

Stephen P. Halbrook, FIREARMS LAW DESKBOOK, § 7:7 (Oct. 2022 Update) .............. 9

***Regulations:***

*Factoring Criteria for Firearms with Attached "Stabilizing Braces,"*
     88 Fed. Reg. 6,478 (Jan. 31, 2023)...........................................................  *passim*

## INTRODUCTION

The defendants (collectively, the "Department") have issued a final rule that rewrites federal statutes and transforms pistols with stabilizing braces into short-barreled rifles that must be registered. This rule effectively turns millions of law-abiding citizens who possess unregistered pistols with stabilizing braces into criminals guilty of a felony. This rule is a direct violation of both the Second Amendment right to keep and bear arms and the structural limits in the U.S. Constitution that prohibit Congress from delegating its core legislative power. Moreover, the rule exceeds the Department's statutory authority.

If the rule's effective date is not postponed or stayed, it will cause irreparable harm to Plaintiff Watterson by depriving him of his constitutional rights. Indeed, he is already being deprived of his Second Amendment rights, because he currently cannot attach his stabilizing brace to his pistol or otherwise possess a pistol with a stabilizing brace for self-defense without risking a 10-year prison sentence.

## FACTUAL BACKGROUND

On January 31, 2023, the Department published the final rule regulating pistols with stabilizing braces. *See Factoring Criteria for Firearms with Attached "Stabilizing Braces,"* 88 Fed. Reg. 6,478 (Jan. 31, 2023) (the "Rule"). The Rule redefines "rifle" (and thus "short-barreled rifle") in the National Firearms Act and Gun Control Act to include pistols with stabilizing braces. *See id.* at 6,480, 6,574-75. This is contrary to the Bureau of Alcohol, Tobacco, Firearms, and Explosives' ("ATF's") previous acknowledgements that pistols with stabilizing braces are not short-barreled rifles because they are not intended to be fired from the shoulder. *See* Mot. Summ. J. Exs. 6-9. Accordingly, the Rule expressly states that it "overrul[es] ATF's previous classification letters." Rule, 88 Fed. Reg. at 6,480.

 The Rule thus has significant criminal consequences for the millions of law-abiding citizens who have purchased stabilizing braces or pistols with stabilizing

braces already attached. *See id.* at 6,573; Mot. Summ. J. Ex. 12 at MSJ_033. Possession of an unregistered short-barreled rifle is punishable by 10 years in prison and a $250,000 fine, and there are severe criminal penalties, including imprisonment, for non-compliance with statutory restrictions on their transfer and transportation. 26 U.S.C. §§ 5861, 5871, 5872; 18 U.S.C. §§ 922(a)(1), (4), (b)(4); 3571; *see* Compl. at ¶¶ 21-23, 27-29. According to the Rule, over a million persons unlawfully possess unregistered short-barreled rifles and are thereby guilty of a felony that carries a 10-year sentence, including persons who relied on ATF's previous classifications regarding specific braces. *See* Rule, 88 Fed. Reg. at 6,480-82, 6,563, 6,573.

The Rule provides compliance options that would allow persons who possessed an unregistered pistol equipped with a stabilizing brace on January 31, 2023, to comply with the statutory requirements (as modified by the Rule) and avoid prosecution. *See id.* at 6,480-81, 6,570-71; *see* Compl. at ¶¶ 84-93. But the Rule warns that anyone who transfers or "newly makes" a pistol with a stabilizing brace (such as by attaching a stabilizing brace to a pistol) on or after January 31, 2023, can be prosecuted. *See* Rule, 88 Fed. Reg. at 6,480-81; Mot. Summ. J. Ex. 15 at MSJ_041.

Along with millions of others, Watterson is injured by the Rule, because it infringes on his right to have a pistol equipped with a stabilizing brace for self-defense purposes. *See* Mot. Summ. J. Ex. 3 at ¶¶ 4-15, 25-27, 29-31. If he attaches his stabilizing brace to his pistol, he risks prosecution and a 10-year prison sentence for possessing an unregistered short-barreled rifle under the Rule—even though ATF previously acknowledged his specific stabilizing brace does not transform a pistol into a rifle. *Id.* at ¶¶ 18-26. To be able to lawfully attach his stabilizing brace under the Rule and thereby have a pistol with a stabilizing brace for self-defense, Watterson would need to wait several months to a year for approval, pay a $200 tax, and comply with additional requirements. *Id.* at ¶ 27; *see* Rule, 88 Fed. Reg. at 6,558-59.

<u>**S**TANDARD FOR **G**RANTING THE **M**OTION</u>

When deciding whether to grant a motion under 5 U.S.C. § 705 or grant a preliminary injunction, courts apply a largely identical four-factor test. *See Nken v. Holder*, 556 U.S. 418, 434 (2009) (noting the "substantial overlap" between factors for a stay pending appeal and a preliminary injunction); *Texas v. EPA*, 829 F.3d 405, 424-36 (5th Cir. 2016) (considering the four *Nken* factors when staying an agency's action under 5 U.S.C. § 705); *Voting for Am., Inc. v. Andrade*, 488 F. App'x 890, 893 (5th Cir. 2012) (per curiam) (describing stay and preliminary-injunction factors as being "virtually the same"). Courts consider: (1) whether the movant "has made a strong showing" of likely success "on the merits; (2) whether [he] will be irreparably injured absent" preliminary relief; (3) whether preliminary relief "will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken*, 556 U.S. at 434 (quotation omitted). The final factors "merge" and are considered together if "the Government is the opposing party." *Id.* at 435.

<u>**A**RGUMENT AND **A**UTHORITIES</u>

**I.    P**LAINTIFF **I**S **L**IKELY TO **S**UCCEED ON THE **M**ERITS.

Watterson easily satisfies the first factor. He simply needs to show "a substantial likelihood of success" and "does not need to prove his case." *Lakedreams v. Taylor*, 932 F.2d 1103, 1109 n.11 (5th Cir. 1991). And when, as here, there are "serious legal question[s] involved and the balance of equities heavily favors" granting preliminary relief, the plaintiff need only "present a substantial case on the merits." *Weingarten Realty Inv'rs v. Miller*, 661 F.3d 904, 910 (5th Cir. 2011) (stay); *see Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 543 (6th Cir. 2007) (preliminary injunction). Watterson has done so as explained below and in his Motion for Summary Judgment. *See* Mot. for Summ. J., ECF No. 6.

**A. The Rule Violates the Second Amendment.**

Watterson will likely succeed on his claim that the Rule—and the National

3

Firearms Act and Gun Control Act to the extent the Rule properly interprets those statutes—violates the Second Amendment. *See id.* at Part II. Pistols with stabilizing braces fall within the Second Amendment's scope, because they are "modern instruments that facilitate armed self-defense." *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2132 (2022); Rule, 88 Fed. Reg. at 6,566 (recognizing that individuals can use pistols with stabilizing braces for "personal defense"); Mot. Summ. J. Ex. 3 at ¶¶ 4-15. Accordingly, "the Constitution presumptively protects" the uninfringed possession of pistols with stabilizing braces, and the Department has the burden of "justifying [its] regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 143 S. Ct. at 2130.

The Department has failed to carry its burden of "affirmatively prov[ing]" that historical tradition permits the Rule's (or the statutes') infringement on law-abiding individuals' right to make or possess pistols with stabilizing braces. *Id.* at 2127. Although the Department suggests the regulations are justified by historical prohibitions on dangerous and unusual weapons, Rule, 88 Fed. Reg. at 6,548, its own evidence demonstrates that pistols with stabilizing braces are in common use by law-abiding citizens for lawful purposes, *id.* at 6,573 (acknowledging that at least "1.4 million firearm owners" have "pistols with 'stabilizing braces' attached"); 6,550 (noting that over 641,000 short-barreled rifles are lawfully registered); 6,565-66 (acknowledging that pistols with stabilizing braces can be used for "personal defense" and could be helpful in controlling the population of feral hogs, which cause millions of dollars in damages annually). That is fatal to its arguments that the Rule's restrictions are consistent with the Second Amendment. *See Caetano v. Massachusetts*, 577 U.S. 411, 420 (2016) (Alito J., concurring) (explaining weapons cannot be banned if they "are commonly possessed by law-abiding citizens for lawful purposes *today*" and concluding that 200,000 stun guns demonstrated common use).

The Rule's restrictions on a person's right to possess pistols with stabilizing

4

braces and right to attach braces to their pistols cannot be justified by history and tradition. Americans have enjoyed the right to make, modify, and possess guns for centuries, and national restrictions on most gun accessories are of recent vintage. *See Joseph G.S. Greenlee, The American Tradition of Self-Made Arms*, 54 ST. MARY'S L.J. 35, 78 (2023) ("[T]here were no restrictions on the manufacture of arms for personal use in America during the seventeenth, eighteenth, or nineteenth centuries."); *Miller v. Bonta*, 542 F. Supp. 3d 1009, 1024 (S.D. Cal. 2021) ("Prior to the 1990's, there was no national history of banning weapons because they were equipped with furniture like pistol grips, collapsible stocks, flash hiders, flare launchers, or barrel shrouds."), *vacated*, No. 21-55608, 2022 U.S. App. LEXIS 21172, at *2 (9th Cir. Aug. 1, 2022) (vacating judgment in light of *Bruen*). And there is no historical analogue that justifies a registration requirement compelling law-abiding citizens to wait months to a year to possess a pistol with a stabilizing brace or that justifies a tax designed to discourage the exercise of Second Amendment rights, Mot. for Summ. J. Ex. 13 at MSJ_34; *see Bruen*, 142 S. Ct. at 2138 n.9 (indicating that "lengthy wait times in processing license applications or exorbitant fees" may impermissibly infringe on the right of law-abiding citizens to public carry); *Heller v. District of Columbia*, 670 F.3d 1244, 1270, 1292 (D.C. Cir. 2011) (Kavanaugh, J, dissenting) (concluding a registration requirement for gun owners was not supported by history and tradition); *Murphy v. Guerrero*, No. 1:14-CV-00026, 2016 U.S. Dist. LEXIS 135684, at *34-37, 79-83 (D. N. Mar. I. Sept. 28, 2016) (concluding a registration requirement with a 15-day waiting period and a $1,000 tax was unconstitutional). Watterson will thus likely succeed on his Second Amendment claim or, at least, has presented a "substantial case" on this "serious legal question." *See Miller*, 661 F.3d at 910.

## B. The Rule Violates Article I and Constitutional Separation-of-Powers Principles.

Watterson has likewise shown that he is likely to succeed, or at least presented

a substantial case, as to his claim that the Department lacked the constitutional authority to promulgate the Rule. *See* Mot. for Summ. J. Part III.

The Constitution vests "[a]ll legislative Powers" in Congress, U.S. Const. art. I, § 1, and Congress cannot "abdicate" or "transfer" "the essential legislative functions with which it is thus vested," *Panama Ref. Co. v. Ryan*, 293 U.S. 388, 421 (1935) (quotation omitted). Although some delegations are constitutionally permissible under more recent Supreme Court precedent, *Jarkesy v. SEC*, 34 F.4th 446, 460-61 (5th Cir. 2022), the prohibition on the transfer of "powers which are *strictly* and *exclusively* legislative" remains, *Gundy v. United States*, 139 S. Ct. 2116, 2123 (2019) (plurality op.) (emphases added). Congress thus may not delegate *essential* or *exclusively* legislative power. *See Panama Ref. Co.*, 293 U.S. at 421 (explaining that that Congress must itself "lay[] down policies and establish[] standards"); *Indus. Union Dep't, AFL-CIO v. API*, 448 U.S. 607, 687 (1980) (Rehnquist, J., concurring) (explaining that "critical policy decisions" are "the very essence of legislative authority" and "must be made by the elected representatives"). And the power to declare conduct a crime that is punishable by 10 years' imprisonment must be such a core legislative power. *See United States v. Davis*, 139 S. Ct. 2319, 2323 (2019) ("Only the people's elected representatives in Congress have the power to write new federal criminal laws."); *Cargill v. Garland*, No. 20-51016, 2023 U.S. App. LEXIS 344, at \*50 (5th Cir. Jan. 6, 2023) (en banc) (suggesting that it would be problematic "[i]f ATF could change the scope of criminal liability by issuing a regulation," because then "the Executive could wield power that our Constitution reserves to the Legislature").

The Rule is thus an unconstitutional exercise of core legislative power. Not only did the Department make the policy decision that unregistered possession of pistols with stabilizing braces is a crime that can be punished with 10 years' imprisonment, Rule, 88 Fed. Reg. at 6,480-82; Compl. at ¶¶ 21-23, 27-28, but it also crafted a purported "enforcement discretion" scheme that waives statutory

requirements for certain persons if they abide by one of the Rule's compliance options, *see* Rule, 88 Fed. Reg. at 6,480-81, 6,507, 6,549, 6,570-71; Compl. at ¶¶ 84-93. Such significant policy decisions with severe criminal consequences cannot be delegated to unelected officials. *See Cargill*, 2023 U.S. App. LEXIS 344, at *5 (allowing ATF "rather than Congress . . . set forth the scope of criminal prohibitions" would violate the principle that "[i]t is the legislature . . . which is to define a crime, and ordain its punishment" (quotation omitted)). Nor do Supreme Court cases approving limited delegations in the criminal context demonstrate otherwise as they are distinguishable. *See, e.g. United States v. Grimaud*, 220 U.S. 506, 521-22 (1911) (involving a public welfare offense with less serious penalties); *Loving v. United States*, 517 U.S. 748, 753-54 (1996) (Thomas, J., concurring) (noting the unique context of military prosecutions); *Gundy*, 139 S. Ct. at 2123-25 (plurality op.) (concluding the delegated authority in the Sex Offender Registration and Notification Act was a feasibility determination, not the policy decision of whether a statute should apply to a subset of persons); *Touby v. United States*, 500 U.S. 160, 162-63 (1991) (discussing specific factors and findings required by the Controlled Substances Act); *Gundy*, 139 S. Ct. at 2141 (Gorsuch, J., dissenting) (describing the delegation approved in *Touby* as being "an essentially fact-finding responsibility").

In any event, the Rule is also an unconstitutional delegation, because Congress failed to provide an intelligible principle to guide the Department's discretion. *See Jarkesy*, 34 F.4th at 46 (explaining a delegation is unconstitutional if Congress failed to "provide[] an intelligible principle such that the agency exercises only executive power"). Here, Congress did not cabin the Department's discretion by setting forth specific fact findings that must be made to expand the definitions in the federal firearm statutes. Instead, it simply tasked the Department with "[t]he administration and enforcement" of the National Firearms Act, 26 U.S.C. § 7801(a)(2)(A), and instructed it to prescribe "such rules and regulations as are necessary to carry out"

the Gun Control Act, 18 U.S.C. § 926(a). There is a "total absence of guidance" that restricts the Department's ability to expand the definitions and criminal liability, which is "impermissible under the Constitution." *Jarkesy*, 34 F.4th at 463. Accordingly, there is no true intelligible principle in the statutes that would allow the Department to issue the Rule and create new crimes without violating the structural provisions of the Constitution.

### C. The Rule Exceeds the Department's Statutory Authority.

Watterson has similarly shown that he has "a substantial likelihood of success" as to his claim that the Rule exceeds the Department's statutory authority, *Lakedreams*, 932 F.2d at 1109 n.11, or at least, "present[ed] a substantial case on the merits" regarding the "serious legal question" of the scope of the major questions doctrine, *Miller*, 661 F.3d at 910. *See* Mot. for Summ. J. Part IV.

Congress did not speak clearly—as required—to give the Department the authority to adopt the Rule. The Rule is a major policy decision of great political significance because it infringes on individual liberties: it turns millions of Americans into criminals guilty of felonies and restricts the right to make and possess pistols with stabilizing braces. *See, e.g.*, Rule, 88 Fed. Reg. at 6,480-82. It also fundamentally changes the statutory scheme by crafting an "enforcement discretion" scheme. *See id.* at 6,480-81, 6,563, 6,570-71; *see also* Compl. at ¶¶ 84-93. Because the Rule makes decisions of "such magnitude and consequence," those decisions rest with Congress or, at the very least, with "an agency acting pursuant to a clear delegation from that representative body." *West Virginia v. EPA*, 142 S. Ct. 2587, 2616 (2022)). Accordingly, the Department "must point to clear congressional authorization for the power it claims." *Id.* at 2609 (quotation omitted).

The Department fails to do so, because Congress did not speak clearly to give the Department the power it claims. *See* 26 U.S.C. § 7801(a)(2)(A); 18 U.S.C. § 926(a). That is fatal under the major questions doctrine. *See Gun Owners of Am. v. Garland*,

19 F.4th 890, 919 (6th Cir. 2021) (Murphy, J., dissenting); *see also United States v. Kuzma*, 967 F.3d 959, 971 (9th Cir. 2020) (noting the National Firearms Act does not delegate the "authority to promulgate underlying *regulatory* prohibitions, which are then enforced by a criminal statute prohibiting willful violations of those regulations"); Stephen P. Halbrook, FIREARMS LAW DESKBOOK, § 7:7 (Oct. 2022 Update) (similar).

Regardless, even apart from the major questions doctrine, the Rule exceeds the Department's statutory authority by expanding the definition of "rifle" (and thus short-barreled rifle). Congress defined rifle based on whether the weapon was "designed or redesigned, made or remade, and intended to be fired from the shoulder." 26 U.S.C. § 5845(c); 18 U.S.C. § 921(a)(7). As ATF previously recognized, this definition necessarily excludes pistols with stabilizing braces as they are designed to be braced against a shooter's *forearm*, not braced against a shooter's *shoulder*. *See* Mot. Summ. J. Exs. 6-9. Yet the Department expanded the definition of rifle to include weapons "equipped with . . . a 'stabilizing brace'" that (1) have any surface area that could be used for shoulder firing, and (2) fail a prong of a multi-factor test. Rule, 88 Fed. Reg. at 6,574-75. The multi-factor test examines whether a gun *could* be fired from the shoulder, not whether it was *designed and intended* to be fired in that fashion. This revision thus rewrites, rather than merely interprets, statutory terms.

The Department, however, has no statutory authority to expand the definition of "rifle" and create new crimes (as opposed to its authority to omit weapons from the definition of "firearm" after making specific fact findings, *see* 26 U.S.C. § 5845(a)). *See Gonzales v. Oregon*, 546 U.S. 243, 262-63 (2006); *Gun Owners*, 19 F.4th at 919 (Murphy, J., dissenting). The Department similarly lacks the authority to regulate stabilizing braces, which are not swept into the statutory definition of firearm unlike other gun parts. *See Vanderstok v. Garland*, No. 4:22-cv-00691-O, 2022 U.S. Dist. LEXIS 159459, at *19-20 (N.D. Tex. Sept. 2, 2022). And the Department lacks the

9

authority to provide compliance options that are outside of the statutory scheme. *See* Mot. Summ. J. Ex. 13 at MSJ_034, Ex. 10 § 3.3; *Util. Air Regulatory Grp. V. EPA*, 573 U.S. 302, 328 (2014) ("Agencies are not free to adopt . . . unreasonable interpretations of statutory provisions and then edit other statutory provisions to mitigate the unreasonableness." (quotation omitted)). Watterson has thus shown he will likely succeed on his statutory claim, as well as his constitutional claims.

## II.   PLAINTIFF WILL SUFFER IRREPARABLE HARM IN THE ABSENCE OF PRELIMINARY RELIEF.

Watterson also satisfies the second factor, because he is—and will continue to—suffer irreparable harm in the absence of preliminary relief. The Rule prevents Watterson from being able to attach his stabilizing brace to his pistol and have a pistol equipped with a stabilizing brace for self-defense without risking prosecution and a 10-year prison sentence. *See* Mot. Summ. J. Ex. 3 at ¶¶ 26-27; Rule, 88 Fed. Reg. at 6,480-81. This "loss of constitutional freedoms for even minimal periods of time . . . unquestionably constitutes irreparable injury." *BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021) (quotation omitted); *see Ezell v. City of Chicago*, 651 F.3d 684, 698 (7th Cir. 2011) (explaining that if a range ban is unconstitutional, plaintiffs' Second Amendment rights are violated "every day it remains on the books"); *Hardaway v. Nigrelli*, No. 22-CV-771 (JLS), 2022 U.S. Dist. LEXIS 200813, at *42-43 (W.D.N.Y. Nov. 3, 2022) (concluding the irreparable harm element was satisfied when plaintiffs were forced to "forgo their Second Amendment rights to exercise their First Amendment rights").

Nor can the Department suggest that this irreparable harm is self-imposed or imaginary. Watterson faces a credible threat of prosecution if he exercises his Second Amendment rights. *See* Mot. for Summ. J. Ex. 3 at ¶¶ 18-26. Not only does the Rule revoke the prior classification letter that recognized his specific stabilizing brace would *not* transform a pistol into a short-barreled rifle, but it also states that

"possessors of firearms equipped with 'stabilizing braces' that were at issue in those letters may also be in possession of unregistered [National Firearm Act] firearms." Rule, 88 Fed. Reg. at 6,480; *see* Mot. for Summ. J. Ex. 3 at ¶¶ 11-12, 25. Accordingly, the chilling of Watterson's Second Amendment rights caused by the Rule's "threat of a potential felony indictment" satisfies the irreparable harm requirement. *See Vanderstok v. Garland*, No. 4:22-cv-00691-O, 2022 U.S. Dist. LEXIS 180398, at *16-17 (N.D. Tex. Oct. 1, 2022) (explaining that the plaintiffs' decision to not purchase products "in response to the perceived threat of looming civil and criminal liability" according to a final rule "sufficiently demonstrated irreparable harm"); *Rigby v. Jennings*, No. 21-1523 (MN), 2022 U.S. Dist. LEXIS 172375, at *27 (D. Del. Sept. 23, 2022) (finding "irreparable harm" where plaintiffs "are threatened by criminal penalties should they engage in conduct protected by the Second Amendment").

Furthermore, there is no way for Watterson to avoid an infringement of his Second Amendment rights. Even if he attempted to comply with the Rule's unlawful requirements, it would take months to a year to receive permission to possess a pistol equipped with a stabilizing brace. *See* Mot. Summ. J. Ex. 3 at ¶¶ 27, 29-30; Rule, 88 Fed. Reg. at 6,558-89. He would additionally have to incur unrecoverable compliance costs, which would constitute irreparable harm. *See, e.g.*, *Texas*, 829 F.3d at 433-34 (explaining that "complying with a regulation later held invalid almost *always* produces the irreparable harm of nonrecoverable compliance costs" and that "it is not so much the magnitude but the irreparability that counts" (quotations omitted)). And even if Watterson could "avoid the harm by complying with the unlawful agency rule"—which he cannot—that is "no answer" to negate the showing of irreparable harm. *See Vanderstok*, 2022 U.S. Dist. LEXIS 159459, at *29.

### III.   THE BALANCE OF THE EQUITIES AND PUBLIC INTEREST WEIGH IN FAVOR OF GRANTING PRELIMINARY RELIEF.

Watterson also satisfies the third and fourth factors, because the absence of

11

preliminary relief "will injure other parties" and "the public interest favors" preliminary relief. *See Texas,* 829 F.3d at 434.

Because it can "be assumed that the Constitution is the ultimate expression of the public interest," the "enforcement of an unconstitutional law is always contrary to the public interest." *Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013) (quotations omitted); *see Jackson Women's Health Org. v. Currier*, 760 F.3d 448, 458 n.9 (5th Cir. 2014) ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights." (quotation omitted)). It is therefore in the public interest to grant preliminary relief and stop the violation of individual constitutional rights. *See Ezell*, 651 F.3d at 710 (concluding "[t]he balance of harms favors the plaintiffs" where they "have established a strong likelihood that they are suffering violations of their Second Amendment rights every day the range ban is in effect"); *Rocky Mt. Gun Owners, Nat'l Ass'n v. Bd. of Cty. Comm'rs*, No. 1:22-cv-02113-CNS-MEH, 2022 U.S. Dist. LEXIS 156308, at *4 (D. Colo. Aug. 30, 2022) (concluding it was in the public interest to prevent the violation of the plaintiff's Second Amendment rights). Granting relief also benefits the public given Watterson's likelihood of success on his separation-of-powers claim, because the public interest is "served by maintaining our constitutional structure." *See BST Holdings*, 17 F.4th at 618-19. The public interest is likewise served by stopping the enforcement of an unlawful regulation. After all, the public is harmed by "the perpetuation of unlawful agency action," *Louisiana v. Biden*, 55 F.4th 1017, *36 (5th Cir. 2022) (quotation omitted), and has an interest "in having governmental agencies abide by the federal laws that govern their existence and operations," *State v. Biden*, 10 F.4th 538, 559-60 (5th Cir. 2021) (quotation omitted); *see Jacksonville Port Auth. v. Adams*, 556 F.2d 52, 58-59 (D.C. Cir. 1977) ("[T]here is an overriding public interest . . . [in] an agency's faithful adherence to its statutory mandate.").

The Department will likely counter that relief will threaten public safety, Rule,

88 Fed. Reg. at 6,481, but that is speculative at best. Despite millions of pistols with stabilizing braces, the Department points to only two crimes and less than 300 investigations involving them over the past decade. *Id.* at 6,499. Nor is there any evidence the Rule would prevent criminals from possessing and using pistols with stabilizing braces as opposed to simply depriving law-abiding citizens of the ability to defend themselves effectively with a gun that is easier and safer for them to shoot. *See Hardaway*, 2022 U.S. Dist. LEXIS 200813, at *43-44 (W.D.N.Y. 2022) (noting preliminary relief would benefit the public where "the challenged law [prohibiting concealed carry in places of worship] creates a vulnerable population of attendees . . . left to the whims of potential armed wrongdoers who are uninterested in following the law in any event"). Regardless, the public's interest in allowing "law-abiding citizens . . . to engage in historically lawful conduct" outweighs any speculative interest the Department has in requiring current possessors of pistols with stabilizing braces to register those weapons and requiring citizens to apply for permission to attach stabilizing braces to pistols. *See Vanderstok v. BlackHawk Mfg. Grp., Inc.*, No. 4:22-cv-00691-O, 2022 U.S. Dist. LEXIS 200315, at *15 (N.D. Tex. Nov. 3, 2022). That is especially true considering that the Department seeks to overrule "ATF regulatory precedent against a public that has relied on that historic posture." *Id.*

## IV.   THE COURT SHOULD POSTPONE OR STAY THE RULE'S EFFECTIVE DATE OR, ALTERNATIVELY, ISSUE A PRELIMINARY INJUNCTION.

To stop the ongoing deprivation of Second Amendment rights and to prevent additional irreparable harm while this case is pending, the Court should postpone or stay the Rule's effective date until 60 days after this case is resolved on the merits under 5 U.S.C. § 705. Watterson would then not need to fear prosecution under the Rule and could rely on the prior ATF classifications concluding that a stabilizing brace does not transform a pistol into a short-barreled rifle.

Section 705 specifically authorizes courts to "issue all necessary and

appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings." Whereas agencies are limited to postponing an effective date, federal courts have the "broader power" to "postpone the effective date" or "*to preserve status or rights pending conclusion of the review proceedings.*'" *Texas v. Biden*, No. 2:21-CV-067-Z, 2022 U.S. Dist. LEXIS 226330, at *23 (N.D. Tex. Dec. 15, 2022) (quoting 5 U.S.C. § 705). Courts thus have broad power to fashion appropriate relief under § 705.

The Court should exercise that power and postpone the Rule's effective date until 60 days after this case has been resolved on the merits. Although the Department claims the Rule's effective date is its publication date (January 31, 2023), Rule, 88 Fed. Reg. at 6,478, 6,480, it cannot make the Rule effective immediately, *see* 5 U.S.C. § 553(d) (requiring publication "not less than 30 days before [a substantive rule's] effective date"); *Nat'l Fed'n of Indep. Bus. v. OSHA*, 142 S. Ct. 661, 665 (2022) ("Administrative agencies are creatures of statute. They accordingly possess only the authority that Congress has provided."). The Rule's true effective date—at the absolute earliest—would be March 2, 2023. *See* 5 U.S.C. § 553(d).[1] *See Envtl. Defense Fund v. EPA*, 515 F. Supp. 3d 1135, 1151 (D. Mont. 2021) (concluding the agency lacked the authority to make the rule "effective immediately on publication" and declaring the "rule is ineffective until 30 days from the date of its publication"). Accordingly, the Court can and should postpone that effective date.

---

[1] Under 5 U.S.C. § 801(a)(3), the Rule cannot be effective until even later. *See* 5 U.S.C. § 801(a)(3) (providing that "[a] major rule relating to a report submitted [to Congress] shall take effect on the latest of . . . 60 days after the date on which . . . Congress receives the report . . . [or] the rule is published in the Federal Register"). It is unclear, however, whether a failure to comply with the Congressional Review Act is reviewable. *Compare, e.g.*, *Montanans for Multiple Use v. Barbouletos*, 568 F.3d 225, 229 (D.C. Cir. 2009) (concluding that § 805 "precludes review" of noncompliance with the Act), *with United States v. S. Ind. Gas & Elec. Co.*, No. IP99-1692-C-M/S, 2002 U.S. Dist. LEXIS 20936, at *18 (S.D. Ind. 2002) (concluding that Congress's actions are not subject to judicial review, but an agency's actions are).

The Department will likely counter that the Rule is an interpretive rule that can be effective immediately and that the Court cannot postpone an effective date that has already passed. *See* Rule, 88 Fed. Reg. at 6,480 (citing 5 U.S.C. § 553(d)(2)). But this is false. As explained in the summary-judgment motion (at 8-9), the Rule is a substantive rule that is "binding" and creates "rights and obligations." *See Texas v. United States*, 809 F.3d 134, 171 (5th Cir. 2015), *aff'd* 577 U.S. 1101 (2016). It not only overrules prior classifications of weapons, Rule, 88 Fed. Reg. at 6,480, constituting a "substantive change in existing law or policy," *Texas v. United States*, 86 F. Supp. 3d 591, 670 (S.D. Tex. 2015), but it also confers benefits, such as waiving a $200 tax and removing agency discretion to prosecute those who satisfy the Rule's compliance options, *see* Rule, 88 Fed. Reg. at 6,480-81, 6,498; *Texas*, 809 F.3d at 148, 171-72, 176.

In any event, even assuming the Rule's effective date is January 31, 2023, the Court can stay the Rule and set a new effective date as it would be "necessary and appropriate" to preserve the status quo and rights pending review. 5 U.S.C. § 705; *see Texas*, 2022 U.S. Dist. LEXIS 226330, at *22-23 (concluding that "[w]hether the effective date . . . has passed is irrelevant," because courts can and routinely do "stay already-effective action" under § 705). The Court should therefore grant relief under § 705 and postpone or stay the Rule's effective date.

The Court should alternatively grant a preliminary injunction under Federal Rule of Civil Procedure 65 and temporarily enjoin the Department from enforcing the National Firearms Act or the Gun Control Act in accordance with the Rule. Doing so would temporarily protect Watterson from prosecution under the Rule.

## CONCLUSION

The Court should therefore postpone or stay the Rule's effective date until 60 days after the case is resolved on the merits.

Date: February 2, 2023

Respectfully submitted,

*/s/ Autumn Hamit Patterson*

ROBERT HENNEKE
Texas Bar No. 24046058
rhenneke@texaspolicy.com
CHANCE WELDON
Texas Bar No. 24076767
cweldon@texaspolicy.com
AUTUMN HAMIT PATTERSON
Texas Bar No. 24092947
apatterson@texaspolicy.com
CLAYTON WAY CALVIN
Texas Bar No. 24132780
ccalvin@texaspolicy.com
TEXAS PUBLIC POLICY FOUNDATION
901 Congress Avenue
Austin, Texas 78701
Telephone:   (512) 472-2700
Facsimile:   (512) 472-2728

*Counsel for Plaintiff*

16

## **CERTIFICATE OF SERVICE**

I certify that I caused the foregoing document to be served via certified mail on

February 2, 2023, to:

Bureau of Alcohol, Tobacco, Firearms and Explosives
99 New York Avenue NE
Washington, DC 20226

Director Steven Dettelbach
Bureau of Alcohol, Tobacco, Firearms and Explosives
99 New York Avenue NE
Washington, DC 20226

United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Attorney General Merrick Garland
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Civil Process Clerk
U.S. Attorney's Office for the Eastern District of Texas
110 North College, Suite 700
Tyler, Texas 75702

Faith E. Lowry
Michael Drezner
Jody Lowenstein
United States Department of Justice
1100 L St. NW
Washington, D.C. 20530

*/s/ Autumn Hamit Patterson*
AUTUMN HAMIT PATTERSON

## **CERTIFICATE OF CONFERENCE**

I hereby certify, pursuant to Local Rule CV-7(i), that (1) I complied with the meet-and-confer requirement in Local Rule CV-7(h), and (2) this motion is opposed.

On February 2, 2023, I had a telephone conference with Faith Lowry, Michael Drezner, and Jody Lowenstein, who are representing the defendants in this case. In that conference we discussed this motion and possible agreements regarding a briefing schedule. The defendants do not think that the plaintiff is likely going to be successful on the merits and disagree that he is facing irreparable harm. Accordingly, the government indicated that it is opposed to preliminary relief in this case. Because no agreement about the necessity of preliminary relief could be reached and the discussion ended in an impasse, there is an open issue for the court to resolve.

*/s/Autumn Hamit Patterson*
AUTUMN HAMIT PATTERSON